# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### Oakland Venue

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| | ) | **Docket No.:    0971 4:15CR00252-004 JSW** |
| RONALD BLAKE | ) | |
| | ) | |

**Prepared for:**    The Honorable Jeffrey S. White
United States District Judge

**Prepared by:**    Brian D. Casai
U.S. Probation Officer
Oakland, CA
Work: (510) 637-3595
Fax:   (415) 581-7416
brian_casai@canp.uscourts.gov

**Assistant U.S. Attorney**
Jose Olivera
450 Golden Gate Avenue, Room 6560
San Francisco, CA 94102
(415) 436-6888
jose.olivera@usdoj.gov

**Defense Counsel**
Edwin Ken Prather (Appointed)
461 Bush Street, Suite 350
San Francisco, CA 94108
(415) 881-7774
edwin@pratherlawoffices.com

**Sentence Date:**    January 16, 2018 1:00 PM

**Offense:**    <u>**Count 1**</u>:
Conspiracy to Defraud the United States
18 U.S.C. § 371
Not more than 5 years imprisonment/$250,000 fine
(Class D Felony)

**Release Status:**    Released on personal recognizance bond on November 10, 2015

**Detainers:**    None.

**Codefendants:**    Hugh  Robinson - 0971 4:15CR00252-1
Gary  Bostick  - 0971 4:15CR00252-2
Ana  Bostick - 0971 4:15CR00252-3
Kyadrian  Dennis - 0971 4:15CR00252-5
William  Odom - 0971 4:15CR00252-6
Jamia  Lewis - 0971 4:15CR00252-7

Date Report Prepared:  December 12, 2017        Date Report Disclosed: January 2, 2018

Re:  Blake, Ronald (1950762)                                                                              Page 2

                                  Devonnie  Davison  - 0971 4:15CR00252-8
                                  Brandon  Robinson  - 0971 4:15CR00252-9
                                  Janel  McDonald  - 0971 4:15CR00252-10
                                  Everardo  Laurian  - 0971 4:15CR00252-11

**Related Cases:**       None.

Re:  Blake, Ronald (1950762)                                                    Page 3

**Identifying Data:**

| | |
|---|---|
| **Date of Birth:** | June 14, 1994 |
| **Age:** | 23 |
| **Race:** | Black |
| **Hispanic Origin:** | Non-Hispanic origin |
| **Sex:** | Male |



**SSN#:**               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
**FBI#:**               695813KD3
**USM#:**               50400-177
**State ID#:**          None
**ICE#:**               None
**PACTS#:**             1950762

**Education:**          Some College
**Dependents:**         1
**Citizenship:**        U.S. Citizen
**Immigration Status:** U.S. Citizen
**Country of Birth:**   United States
**Place of Birth:**     Pontiac, MI

**Legal Address:**      1429 E. Robert Street
                        Fort Worth, Texas 76104

**Residence Address:**  1429 E. Robert Street
                        Fort Worth, Texas 76104

**Alias(es):**          Also Known As: Blake, Ronald Gene

**Alternate IDs:**      State ID Number: TX: 08751949

*Restrictions on Use and Redisclosure of Presentence Investigation Report.* Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and  federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

Re:  Blake, Ronald (1950762)                                                  Page 4

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1.    On May 7, 2015, a six-count Indictment was filed in the Northern District of California, charging Hugh Robinson with violations of 18 U.S.C. § 641 – Theft of Public Funds (Counts 1-3) and 18 U.S.C. § 1028A – Aggravated Identity Theft (Counts 4-6).

2.    On July 16, 2015, a seven-count Superseding Indictment was filed in the Northern District of California, charging Hugh Robinson with violations of 18 U.S.C. § 371 – Conspiracy to Defraud the United States (Count 1), 18 U.S.C. § 641 – Theft of Public Funds (Counts 2-4), and 18 U.S.C. § 1028A – Aggravated Identity Theft (Counts 5-7).

3.    On November 5, 2015, a 71-count Second Superseding Indictment was filed in the Northern District of California, Hugh Robinson (Counts 1, and 2-15), Gary Bostick (Counts 1, and 16-23), Ana Bostick (Counts 1, and 24-27), **Ronald Blake** (Counts 1, 28-30, and 31-33), Kyadrian Dennis (Counts 1, and 34-41), William Odom (Counts 1, and 42-47), Jamia Lewis (Counts 1, and 48-53), Devonnie Davison (Counts 1, and 55-57), Brandon Robinson (Counts 1, and 58-63), Janel McDonald (Counts 1, and 64-67), and Everardo Laurian (Counts 1, and 68-71).  The Second Superseding Indictment alleges violations of 18 U.S.C. § Conspiracy to Defraud the United States (Count 1); 18 U.S.C. § 641 – Theft of Public Money (Counts 2-8, 28-30, 34-37, 42-44, 48-50, 54-55, and 58-60); 18 U.S.C. § 1028A – Aggravated Identity Theft (Counts 9-15, 20-23, 26-27, 38-41, 45-47, 51-53, 56-57, 61-62, 66-67, and 70-71); 18 U.S.C. § 1343 – Wire Fraud (Counts 16-19); 18 U.S.C. § 641 & 2 – Theft of Public Money (Counts 24-25, 64-65, and 68-69). The Second Superseding Indictment includes a Forfeiture Allegation pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

4.    On March 26, 2016, **Blake** pled guilty to Count One of the Second Superseding Indictment, and the matter was referred to the U.S. Probation Office for a presentence investigation report.  Judgment and Sentencing are set for January 16, 2018, before the Honorable Jeffrey S. White, U.S. District Judge.

5.    On November 10, 2015, the defendant made an Initial Appearance in the Northern District of Texas and was released on a personal recognizance bond, with U.S. Pretrial Services Supervision.  On November 23, 2015, the defendant made an Initial Appearance in this District and was released on the same terms.  Contact with U.S. Pretrial Services is pending.

6.    On February 7, 2017, Hugh Robinson was sentenced to 144 months custody and 3 years supervised release.

7.    On February 14, 2017, Devonnie Davison was sentenced to 1 day custody and 3 years supervised release.

8.    On May 23, 2017, Brandon Robinson was sentenced to 54 months custody and 3 years supervised release.

Re:  Blake, Ronald (1950762)                                                                                   Page 5

9.      On August 1, 2017, Janel McDonald was sentenced to 65 months custody and 3 years supervised release.

10.     On September 19, 2017, Gary Bostick was sentenced to 60 days custody and 3 years supervised release.

11.     On September 26, 2017, Everardo Laurian was sentenced to 1 day custody and 3 years supervised release.

12.     The matters of the other codefendants remain pending sentencing.

**<u>The Offense Conduct</u>**

13.     The following information was provided by the United States Attorney's Office, which included investigative reports prepared by the Internal Revenue Service (IRS) and contact with the case agent.

14.     An IRS investigation began after a number of U.S. Treasury Checks were cashed at Walmart stores, in the Northern District of California and elsewhere, which appeared to be fraudulent in nature.  Walmart provided information to IRS agents, which was used to determine that many false tax returns had been filed with the IRS, related to the aforementioned U.S. Treasury Checks.  The false claims were submitted in 2013, 2014 and 2015, and involved tax years 2012, 2013, and 2014 U.S. Income Tax Returns.

15.     The false claims requested refunds based on numbers being listed on the tax returns which were false, and primarily false IRS Form W-2's.  The W-2's exhibited common characteristics in the amount of wages, withholdings, and employer.  The IRS was able to determine the W-2's were false based on a comparison of information provided by employers and the information submitted on the false W-2's.  The false returns filed with the IRS requested refunds in either an ACH deposit (direct deposit) or by U.S. Treasury Check (treasury check) form.  Once received, many of the treasury checks were cashed under false pretenses at Walmart.

16.     Surveillance video obtained from Walmart stores identified a number of individuals, attempting to cash the treasury checks at Walmart, using identities that were not their own.  A federal search warrant was executed on April 21, 2015.  During the execution of the warrant, Hugh Robinson was present at a location where approximately $237,394.40 in U.S. Treasury Checks, issued in the name of someone other than Robinson, were seized as evidence.  Robinson was interviewed, and after being advised of his custodial rights, made statements that he had previously cashed U.S. Treasury Checks related to the filing of false tax returns.  Robinson also stated that he cashed U.S. Treasury Checks that were stolen out of the mail.  Robinson stated that he cashed U.S. Treasury Checks in multiple locations, including Richmond, California, and Louisville, Kentucky.  Robinson also stated that he was supposed to meet his supplier of U.S. Treasury Checks in the Los Angeles area later in the week.

17.     During the search, a sheet of paper was seized that contained a list of Social Security Numbers, which appeared to correspond to check cashing accounts used to cash U.S.

Treasury Checks at Walmart stores.  Information obtained from Walmart showed that these check cashing accounts cashed approximately $1,425,613 in U.S. Treasury Checks, at Walmart Stores in California and Kentucky, since March 12, 2013.

18.     Within the course of the scheme, Hugh Robinson, Gary Bostick (Bostick), **Ronald Blake** (**Blake**), and others obtained names of individuals that were used to file false tax returns. To obtain identities for use in the scheme, Hugh Robinson, Bostick, **Blake**, and others searched California death records to obtain names and personal identifying information of deceased individuals for use in the scheme.  Hugh Robinson, Bostick, **Blake**, and others used the identities obtained from death records to electronically file false federal income tax returns, and caused them to be filed, in the name of the deceased, with the IRS.  Hugh Robinson, Bostick, and Blake falsely represented that the individuals earned wages, or other income, and that the individuals listed on the tax returns were entitled to tax refunds.

19.     Hugh Robinson listed his own bank accounts and bank accounts in the names of others on false tax returns that were filed with the IRS to receive payments from the IRS. Thereafter, at a date earlier than January 2014, Hugh Robinson, and others acting in concert with him, requested that the IRS issue checks to pay the fraudulent tax claims. Hugh Robinson, Bostick, **Blake**, and those working with them listed physical addresses on the tax returns that they could access, so that they could obtain the checks.  After obtaining the fraudulent U.S. Treasury checks, Janel McDonald (McDonald), at Hugh Robinson's or **Blake's** request, provided false and fraudulent California identification documents with a designated conspirator's picture thereon in order to facilitate negotiation of the U.S. Treasury checks by the conspirators.

20.     Hugh Robinson, Brandon Robinson, and Devonnie Davison (Davison), took the U.S. Treasury checks to a Walmart store in Richmond, California, where WalMart employees Jamia Lewis (Lewis) and William Odom (Odom) assisted in cashing the checks knowing those checks belonged to others and the U.S. Treasury.  Hugh Robinson and his co-conspirators also obtained false identification documents that matched the names on the U.S. Treasury checks in order to negotiate those illegally-obtained checks at various Walmart stores.  Davison was not among the co-conspirators known to have obtained or used false identification.

21.     Beginning in approximately January 2014, Hugh Robinson and other co-conspirators obtained stolen U.S. Treasury checks that represented tax refunds and Social Security payments to individuals listed on those checks.  To carry out the scheme, Hugh Robinson and his co-conspirators obtained fake identifications in order to cash the stolen U.S. Treasury checks at various Walmart stores.

22.     Beginning in approximately September 2013 and continuing through January 2015, Hugh Robinson utilized the following addresses to receive payment of fraudulently issued U.S. Treasury checks: 14740 San Pablo Avenue, Apt. 5, San Pablo, California; 1716 Broadway, Apt. 5, San Pablo, California; 2131 Sacramento St., Apt. 3, Vallejo, California; 2555 Church Lane, Apt. 307, San Pablo, California; 24035 2nd St., Apt. 203,

Hayward, California; 2601 Hilltop Dr., Apt. 734, Richmond, California; and 968 Appian Way, Pinole, California.

23.    Hugh Robinson utilized the following bank accounts to receive electronic payment of fraudulent federal income tax refunds: I.H.'s accounts ending with 0076 and 8179, from August 21, through August 28, 2013; Hugh Robinson's accounts ending with 6630 and 9589, from July 31, through August 14, 2013; and M.R.'s account ending with 5427 and 6719 from August 21, through September 12, 2013.

24.    From around March 1 through April 5, 2014, P.D. allowed Hugh Robinson to use her residence to file false 2013 federal income tax returns. Hugh Robinson filed the false tax returns from P.D.'s residence using a list of names and Social Security numbers that he acquired.  On August 28, 2014, **Blake** sent Hugh Robinson messages with attachments that included pictures of false and fraudulent identification documents used in the scheme.  **Blake** sent Hugh Robinson a message asking for "sum more ssn."

25.    **Blake** agrees that, starting in 2014, he was involved in the conspiracy to steal money from the federal government.  **Blake** met Hugh Robinson who was cashing U.S. Treasury checks at Walmart stores throughout the United States.  Robinson explained that the U.S. Treasury checks were tax refund payments based on tax returns filed in the name of deceased people.  After their first discussion, Hugh Robinson arranged to have U.S. Treasury checks sent to **Blake**'s residence in Texas.  Hugh Robinson taught **Blake** how to cash U.S. Treasury checks at local Walmart stores.

26.    During the course of the conspiracy, Hugh Robinson also explained how to file false federal income tax returns.  Hugh Robinson explained that he obtained the names of deceased people and filed tax returns in those individuals' names.  **Blake** became involved in the conspiracy and, both Hugh Robinson and **Blake** obtained personal identifying information and filed false federal income tax returns using that information. Hugh Robinson and **Blake** used Rootsweb, ancestry.com, Netdetective.com, and Identicard.com to search for deceased individuals' personal information to use on false tax returns.

27.    Hugh Robinson and **Blake** used a computer at various locations to search those websites. Hugh Robinson and **Blake** also obtained fake identification cards that they used to cash the fraudulent U.S. Treasury checks that were issued.   Hugh Robinson and **Blake** obtained fake California driver's licenses from Janel McDonald.  Hugh Robinson and **Blake** sent to Janel McDonald photos of stolen or fraudulently obtained U.S. Treasury checks along with photos of individuals involved in the scheme in order to have fake identifications created that matched the names contained on the U.S. Treasury checks, but that contained photos of individuals involved in the scheme.  **Blake** sent the information to Janel McDonald through text messages and she mailed the fake California driver's licenses to him. In addition, Hugh Robinson paid cashiers at Walmart to allow them to cash the stolen or fraudulent U.S. Treasury checks.  For example, Hugh Robinson was told when Kyadrian Dennis was working at a particular Walmart store and paid her a fee for allowing him to cash the stolen or fraudulent U.S. Treasury checks.

28.     On August 6, 2015 a federal search warrant was executed at the residence of **Blake**, located at 1423 East Robert Street, Fort Worth, Texas.  Seized during the search warrant were electronics and documents.  Some of the documents seized contained evidence of a conspiracy to file false tax returns and fraudulently cash U.S. Treasury Checks, such as false identification documents (California Identification Card or Driver License) with **Blake's** picture on them, misrepresenting that he was one several deceased individuals.

29.     The government provided that this scheme was "sophisticated" as applicable to guideline scoring as follows.  First, the defendants created a business plan, set interim goals, and recruited others to join the scheme.  Second, the defendants mapped out routes for subordinate co-conspirators to drive that included stops at Walmart stores throughout the Bay Area used to cash U.S. Treasury checks.  Also, defendants obtained fake ID's to facilitate cashing U.S. Treasury checks and flew throughout the country to cash the checks. This involved significant planning.  For the purpose of guideline calculations, the amount of relevant tax loss is $109,322.  The amount relevant to restitution is $36,637.

**Victim Impact**

30.     The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense.  The United States is the victim in this case.  The amount relevant to restitution is $36,637.

**Adjustment for Obstruction of Justice**

31.     The probation officer has no information indicating the defendant impeded or obstructed justice.

**Adjustment for Acceptance of Responsibility**

32.     The defendant entered a guilty plea and was cooperative with the probation officer. During the presentence investigation, the defendant provided the following written statement:

> I am guilty of taking money from the government.  I am guilty of fraud.  I feel bad for the decision I made.  It ruined my life.  I wish I could do something to make this go away.  I am truly sorry for committing this crime.  I feel like this impacted my family because I can't get another job. This impacted the people that's also involved in this crime because they may have gotten jail time.

> My influence to do this crime was based off my living situation.  I'm in debt to school and the bank.  I was just about to have a daughter and I was convinced that this was something that wouldn't affect anyone.

33.     Additionally, Mr. Blake noted that he will "pay as much as [he] can back, accept [his] punishment, and apologize to everyone this affected."

Re:  Blake, Ronald (1950762)                                                    Page 9

### Offense Level Computation

34.    In accordance with the Supreme Court Decision in **United States v. Booker**, the following guideline calculations are no longer binding but advisory. Therefore, they must be considered by the sentencing court together with other sentencing goals. The current United States Sentencing Commission, 2016 Guidelines Manual, is being used as there are no ex post facto issues. USSG §1B1.11(a).

### Count 1: Conspiracy to Defraud the United States

35.    **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 371 would normally be found at USSG §2B1.1. However, USSG §2B1.1(c)(3) provides that if a defendant was convicted under a general fraud statute and the conduct described in the count of conviction establishes an offense specifically covered by another guideline in Chapter 2, the Court should apply that other guideline. As such, Pursuant to USSG §2T1.4(a)(1) and USSG §2T4.1(F), given a tax loss of greater than $100,000, the base offense level is 16.                          **16**

36.    **Specific Offense Characteristics:**  Pursuant to USSG §2T1.4(b)(2), because the offense involved sophisticated means, a 2-level increase is applicable.          **+2**

37.    **Victim Related Adjustment:** None.                                       **0**

38.    **Adjustment for Role in the Offense:** None.                             **0**

39.    **Adjustment for Obstruction of Justice:** None.                          **0**

40.    **Adjusted Offense Level (Subtotal):**                                   **18**

41.    **Chapter Four Enhancement:** None.                                       **0**

42.    **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. The defendant pled guilty and provided a statement addressing his acceptance of responsibility. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a).                      **-2**

43.    **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b).              **-1**

44.    **Total Offense Level:**                                                  **15**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

45.    Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Court should consider the following criminal history category calculation to be advisory.

Re:  Blake, Ronald (1950762)                                                        Page 10

**Juvenile Adjudication(s)**

46.    None.

**Adult Criminal Conviction(s)**

| Date of<br>Arrest | Conviction/Court | Date Sentence<br>Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|
| 47.    08/06/2015<br>(Age 21) | Possess Less Than 2<br>Ounces Marijuana,<br>misdemeanor/<br>Tarrant County<br>Criminal Court;<br>Docket No.: 1424312 | 04/20/2016: 1 day jail,<br>$200 fine | 4A1.1(c) | 1 |

The defendant was represented by counsel. According to a Fort Worth Police Department
incident report, officers assisting agents executing the federal search warrant related to
the instant offense at Blake's residence uncovered a shoe box containing .08 ounces of
marijuana, along with several Hydrocodone and Tramadone pills.

**Criminal History Computation**

48.    The criminal convictions above result in a subtotal criminal history score of one.

49.    The total criminal history score is one. According to the sentencing table in USSG
       Chapter 5, Part A, a criminal history score of one establishes a criminal history category
       of I.

**Other Criminal Conduct**

| Date of<br>Arrest | Charge | Agency | Disposition |
|---|---|---|---|
| 50.    01/09/2011<br>(Age 16) | Evading Arrest<br>Detention | Fort Worth Police<br>Department, Fort<br>Worth, TX | Dismissed |

According to a Fort Worth Police Department incident report, Blake and two other
individuals, Casson and Tyler, were suspected of attempting to burglarize a vacant rental
home. Upon being confronted by officers, Blake and Casson attempted to flee on foot
before being successfully detained by officers and taken into custody. The case was
dismissed after a deferred prosecution.

**Pending Charges**

51.    None.

### Other Arrests

52.   None.

## PART C. OFFENDER CHARACTERISTICS

53.   The following information was provided by the defendant during the presentence investigation interview. Personal information provided by the defendant was corroborated by his mother, Brenda Adams.

### Personal and Family Data

54.   Ronald Blake was born on June 14, 1994, in Pontiac, Michigan, to Robert Blake (age and location unknown); and Brenda Adams (age 56) currently retired and residing in Fort Worth, Texas.   The defendant advised of two siblings: Kashida Blake (age 26), a pharmacy technician residing in Fort Worth; and Ihyjah Adams (age 18) a Walmart employee residing in Fort Worth.  Mr. Blake advised he has not spoken to his father in at least ten years.

55.   The defendant provided that he resided with his parents and sisters in Detroit, Michigan until they moved to Fort Worth, Texas when he was approximately six years old.  Mr. Blake's father was employed with General Motors, and his mother did office work through a temporary employment service.  The defendant's father reportedly left the family when Mr. Blake was approximately eight years old.  Mr. Blake rarely saw his father after that, and as previously mentioned, he has not seen or spoken with his father in approximately ten years.   The defendant believes his father may suffer from drug addiction, though he is unaware of the specific drug.

56.   The defendant advised his mother provided him with necessities, though anything he may have needed beyond food and clothing, he has provided for himself since age 14.  Mr. Blake grew up playing football and basketball, and he recalled volunteering at a community center when he was younger.  The defendant described himself as a "loner," and he has reportedly not maintained a group of friends throughout the years.  Mr. Blake remembered his mother as "drinking a lot" around the time he was in middle school.  The defendant shared that his mother was diagnosed with bipolar disorder, which he believes is reasonably managed through her prescribed medications.  Mr. Blake advised his mother also suffers from diabetes and high blood pressure.  He provided that he sometimes takes her to doctor appointments and to pick up her medication.

57.   The defendant has never been married.  He has reportedly maintained a relationship with Banesha Jackson (age 25) for approximately three years.  Ms. Jackson is employed at a local airport and maintains an apartment in Grand Prairie, Texas.  The couple has a daughter together, Zenniah Blake (age 2).  Mr. Blake reported a positive and supportive relationship with Ms. Jackson, and their daughter is happy and healthy.

58.   The defendant currently resides at his mother's home in Fort Worth, though he also spends time at his significant other's apartment.  A response from the Northern District of Texas regarding a description of the defendant's residence is pending.

Re:  Blake, Ronald (1950762)                                                      Page 12

**Physical Condition**

59.    The defendant is a 23-year-old black male. He stands 6'2" tall, weighs 175 pounds, and
       has brown eyes and black hair.  Mr. Blake noted no scars, and he has a tattoo of a cross
       with his mother's name on his right arm.  The defendant noted no physical health
       concerns and takes no medications.

**Mental and Emotional Health**

60.    The defendant noted he has suffered from anxiety and occasional panic attacks since the
       onset of his case.  Mr. Blake provided he experiences the panic attacks approximately one
       to two times per month.  The defendant indicated that he is not interested in mental health
       treatment.  However, given these issues, a psychological evaluation may benefit Mr.
       Blake.

**Substance Abuse**

61.    The defendant indicated he does not drink alcohol.  When he was in high school, Mr.
       Blake reportedly consumed codeine cough syrup approximately once per week.  The
       defendant began smoking marijuana at age 12.  His use eventually became daily, up until
       his arrest in this case.  Mr. Blake indicated he has had no positive drug tests on pretrial
       release (confirmed by pretrial records).  The defendant provided that he is not in need of
       substance abuse treatment at this point.

**Educational, Vocational and Special Skills**

62.    Mr. Blake graduated from Fort Worth Can Academy High School in Fort Worth in 2011
       (verified via transcript).  He reported attending Devry University in Fort Worth for one
       year from 2014 to 2015, with a focus on computer programming.  The defendant
       indicated that he may be interested in furthering his education in computer programming
       or information technology.  Mr. Blake also advised that he would like to study
       photography.

**Employment Record**

63.    From 2013 to present, the defendant has been employed with Suhki's Sushi in Fort
       Worth.  He works as a vendor at different Costco locations in the Fort Worth area, and
       earns $14 per hour on a part-time basis (verified by pay stubs).  The defendant was
       previously employed doing retail work, including positions with Big Lots, Acosta, and
       Walmart.

64.    In the future, Mr. Blake hopes to start his own business, possibly related to photography
       or selling used cars.

**Financial Condition: Ability to Pay**

65.    The defendant is represented by appointed counsel.  Mr. Blake completed financial
       paperwork noting the information below.

Re:  Blake, Ronald (1950762)                                                    Page 13

### Assets

| | | |
|---|---|---|
| Personal Checking Account | Wells Fargo Checking | $200.00 |
| Personal Savings Account | Wells Fargo Savings | $300.00 |
| Vehicle | 2006 Dodge Charger | $3,300.00 |

**Total Assets**                                                              $3,800

### Liabilities

| | | |
|---|---|---|
| Credit Card | Wells Fargo Credit | $1,450.00 |
| Personal Loans | Student Loans | $13,000.00 |
| Back Taxes | | $150.00 |

**Total Liabilities**                                                          $14,600

**Total Net Worth**                                                          ($10,800)

### Monthly Income

| | | |
|---|---|---|
| Salary | | $1,000.00 |
| Spouse Income | Significant Other's Income | $700.00 |

**Total Monthly Income**                                                   $1,700

### Monthly Expenses

| | | |
|---|---|---|
| Home/Rent | | $715.00 |
| Utilities | | $125.00 |
| Cellular Phone | | $125.00 |
| Other Expenses | Transportation | $75.00 |
| Auto Insurance | | $120.00 |
| Loan Payment | | $25.00 |
| Credit Card Minimum Payments | | $25.00 |
| Groceries and Supplies | | $400.00 |

**Total Monthly Expenses**                                                 $1,610

**Total Monthly Cash Flow**                                                      $90

### Analysis

66.     Given the defendant's known financial situation, as well as the significant amount of restitution due, it does not appear that a fine is appropriate in this case.

## PART D. SENTENCING OPTIONS

67.     Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Court should consider the following guideline provisions to be advisory.

### Custody

68.     **Statutory Provisions:** The maximum term of imprisonment on Count 1 is five years. 18 U.S.C. § 371. This offense is a Class D felony. 18 U.S.C. § 3559(a)(4).

69.     **Guideline Provisions:** Based upon a total offense level of 15 and a criminal history category of I, the guideline imprisonment range is 18 months to 24 months. Because the guideline range falls into Zone D of the Sentencing Table, the minimum term must be satisfied by a sentence of imprisonment. USSG §5C1.1(f).

### Supervised Release

70.     **Statutory Provisions:** The Court may impose a term of supervised release of not more than three years on Count 1. 18 U.S.C. § 3583(b)(2). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d).

71.     **Guideline Provisions:** Since the offense for Count 1 is a Class D Felony, the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant

Re:  Blake, Ronald (1950762)                                                    Page 15

to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d).

### Probation

72.     **Statutory Provisions:**  The defendant is eligible for not less than one nor more than five years probation because the offense is a Class D Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 USC § 3563(a)(2).

73.     **Guideline Provisions:** Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment.(n.2).

### Fines

74.     **Statutory Provisions:**  The maximum fine is $250,000. 18 U.S.C. § 3571(b).

75.     A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

76.     **Guideline Provisions:** The fine range for this offense is from $7,500 to $75,000. USSG §5E1.2(c)(3).

77.     Costs of prosecution shall be imposed on the defendant as required by statute. USSG 5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG 5E1.2(d)(7) and 18 U.S.C. 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2016, provides the following monthly cost data:

|          | Bureau of Prisons Facilities | Community Correction Centers | Supervision by Probation Officer |
|----------|------------------------------|------------------------------|----------------------------------|
| Daily    | $88.00                       | $71.00                       | $11.00                           |
| Monthly  | $2,665.00                    | $2,174.00                    | $341.00                          |
| Annually | $31,976.00                   | $26,083.00                   | $4,097.00                        |

### Restitution

78.     **Statutory Provisions:** Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $36,637 shall be ordered in this case.

79.   **Guideline Provisions:** In the case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C. § 1593, § 2248, §2259, § 2264, §2327, § 3663, or § 3663A, or 21 U.S.C. § 853(q). USSG §5E1.1(a)(1).

### Forfeiture

80.   **Statutory Provisions:** Forfeiture is not an issue.

81.   **Guideline Provisions:** Forfeiture is not an issue.

### Denial of Federal Benefits

82.   **Statutory Provisions:** None.

83.   **Guideline Provisions:** None.

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

84.   The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

85.   Presentation of information in this section does not necessarily constitute a recommendation by the probation officer for a sentence outside the applicable advisory guideline range.

86.   In sentencing the defendant, the Court may wish to consider that he falls into Criminal History Category I.  He has one prior misdemeanor conviction for which he was sentenced to one day custody.  This was a conviction for marijuana found in his home at during the execution of the search warrant related to the instant offense.  Mr. Blake largely grew up without his father in his life.   The defendant has a two-year-old child for whom he is a significant source of support.  He has maintained consistent employment

Re:  Blake, Ronald (1950762)                                                                 Page 17

while on pretrial release for more than two years.  These issues are relevant to 18 U.S.C.
§ 3553(a)(1) – "the history and characteristics of the defendant."


Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer


By:  Brian D. Casai
        U.S. Probation Officer


Approved:


Joshua D. Sparks
Supervisory U.S. Probation Officer

**ADDENDUM TO THE PRESENCE REPORT**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**UNITED STATES V. RONALD BLAKE, DKT. 0971 4:15CR00252-004 JSW**

The United States Probation Officer certifies that the presentence investigation report, including any revisions thereof and this addendum, has been disclosed to the defendant's counsel for discussion with the defendant, and to counsel for the Government, pursuant to Crim. L.R. 32-5 and FRCrimP 32(g).

### <u>OBJECTIONS</u>

### <u>By the Government</u>

1.      A written response has been received from the Government, which is in compliance with Crim. L.R. 32-4(b) and (c). There are no objections to the presentence report.

### <u>By the Defendant</u>

2.      A written response has been received from the defense counsel, which is in compliance with Crim. L.R. 32-4(b) and (c). There are no objections to the presentence report.

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

By:  Brian D. Casai
        U.S. Probation Officer

Approved:

Joshua D. Sparks
Supervisory U.S. Probation Officer

**CONFIDENTIAL RESTRICTED**
**SENTENCING RECOMMENDATION**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**UNITED STATES V. RONALD  BLAKE, DKT. 4:15CR00252-4 JSW**

**TOTAL OFFENSE LEVEL**                          **15**
**CRIMINAL HISTORY CATEGORY**                **I**

|  | **Statutory Provisions** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| **CUSTODY:** | 5 years | 18 to 24 months | Not recommended (variance) |
| **SUPERVISED RELEASE:** | 3 years | 1 to 3 years | Not recommended |
| **PROBATION:** | 1 to 5 years | Ineligible | 3 years |
| **FINE:** | $250,000 | $7,500 to $75,000 | Waived |
| **RESTITUTION:** | $36,637 | $36,637 | $36,637 |
| **SPECIAL ASSESSMENT:** | $100 | $100 | $100 |

**Justification:**

Ronald Blake is before the Court after being found guilty of one count of Conspiracy to Defraud the United States (18 U.S.C. § 371).  The defendant and codefendants were involved filing false tax returns in the names of deceased individuals and cashed stolen U.S. Treasury checks using fraudulent identification documents.  Specific to his role in the offense, Mr. Blake obtained fake identification cards and cashed stolen treasury checks at Walmart stores.   The amount of restitution specific to the defendant is $36,637.

In determining the particular sentence to recommend, the U.S. Probation Officer considered the factors set forth in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense and the history and characteristics of the defendant.   Additionally, the Court must consider whether the sentence reflects the seriousness of the offense; whether the punishment affords adequate deterrence to criminal conduct; whether the sentence protects the public from future crimes of the defendant; and whether the sentence provides the defendant with needed

educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The defendant is a 23-year-old man with one prior misdemeanor convictions for possession of marijuana.  He was 20 years old during the greater period he was involved in the offense.  Mr. Blake has been compliant and maintained employment while on pretrial release for more than two years.

Mr. Blake experienced a relatively stable upbringing, though his father was largely absent from his life.  Mr. Blake graduated from high school and has taken some college courses.  The defendant has a two-year-old child with his significant other, for whom he is a significant source of financial support. He resides with his mother, though he spends a good portion of time at his girlfriend's apartment with their child.  Mr. Blake intends to pursue further education to set himself on a stable career path.  The defendant hopes to move past his criminal case, and live a law-abiding and productive life while continuing to support his young daughter.

With regard to the facts of this case, and the defendant's history as noted above ("the history and characteristics of the defendant" as relevant to 18 U.S.C. § 3553(a)(1)), the probation officer considered the defendant's young age, his lack of prior criminal history, and his success while on pretrial release for more than two years (which is indicative of post-offense rehabilitation) to be significantly mitigating.  The probation officer also considered that government has provided notification of its intention to recommend a sentence of probation based on the defendant's thorough cooperation.  As such, the probation officer believes that a sentence below the guideline range for imprisonment is appropriate in this case.  Therefore, the probation officer recommends a sentence of three years of probation.  Such a sentence will provide adequate deterrence to the defendant against future crimes, while allowing him to remain employed and working toward paying the applicable restitution.

A special condition requiring the defendant to comply with the collection of DNA is relevant to his status as a convicted felon.  An expanded search condition is recommended based on the Plea Agreement.  Mr. Blake will be required to pay the mandatory special assessment of $100.  Drug treatment is also recommended.  A condition for community service is also recommended, to provide the defendant with an opportunity to remain focused on positive endeavors and give back to his community.  A condition for financial disclosure is recommended to monitor the defendant's ability to pay restitution.

**Voluntary Surrender:**

It appears the defendant is a person whose release is not restricted under 18 U.S.C. §3143. The defendant has kept all court appearances, complied with conditions of pretrial release, and is not viewed as a flight risk or a danger to the community.  Therefore, the defendant is considered to be a good candidate for voluntary surrender.

**Recommendation**

It is respectfully recommended that sentence in this case be imposed as follows:

Re:  Blake, Ronald (1950762)                                                      Page 3

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that Ronald Blake is hereby placed on probation for 3 years.

While on probation, the defendant shall not commit another Federal, State or local crime, shall comply with the standard conditions that have been adopted by this court, shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on probation and 2 periodic drug tests thereafter, and shall comply with the following conditions:

**Recommendation**

1.  You shall pay any restitution and special assessment that is imposed by this judgment and that remains unpaid at the commencement of the term of probation.

2.  You shall not open any new lines of credit and/or incur new debt without the prior permission of the probation officer.

3.  You shall provide the probation officer with access to any financial information, including tax returns, and shall authorize the probation officer to conduct credit checks and obtain copies of income tax returns.

4.  You shall perform 120 hours of community service as directed by the probation officer.

5.  You shall not have contact with any codefendant in this case, namely Hugh Robinson, Gary Bostick, Ana Bostick, Jamia Lewis, Kyadrian Dennis, William Odom, Devonnie Davison, Brandon Robinson, Janel McDonald, and Everardo Laurian.

6.  You shall cooperate in the collection of DNA as directed by the probation officer.

7.  You shall submit your person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), or any property under your control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state or local law enforcement officer at any time with or without suspicion. Failure to submit to such a search may be grounds for revocation; you shall warn any residents that the premises may be subject to searches.

8.  You shall participate in a program of testing and treatment for drug abuse, as directed by the probation officer, until such time as you are released from treatment by the probation officer. You are to pay part or all of the cost of this treatment, at an amount not to exceed the cost of treatment, as deemed appropriate by the probation officer. Payments shall never exceed the total cost of urinalysis and counseling. The actual co-payment schedule shall be determined by the probation officer.

9.  You shall abstain from the use of all alcoholic beverages.

It is further ordered that the defendant shall pay to the United States a special assessment of $100. Payments shall be made to the Clerk of U.S. District Court, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.   During imprisonment, payment of criminal monetary

Re:  Blake, Ronald (1950762)                                                                                   Page 4

penalties are due at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program.

The Court finds the defendant does not have the ability to pay the fine and orders it waived.

It is further ordered that the defendant shall pay restitution to the Internal Revenue Service-RACS, Attention: Mailstop 6261, Restitution, 333 West Pershing Avenue, Kansas City, Missouri, 64108, in the amount of $36,637. Once the defendant is on probation, restitution must be paid in monthly payments of not less than $100 or at least 10 percent of earnings, whichever is greater, to commence no later than 60 days from placement on supervision. Any established payment plan does not preclude enforcement efforts by the US Attorney's Office if the defendant has the ability to pay more than the minimum due. The restitution payments shall be made to the Clerk of U.S. District Court, Attention: Financial Unit, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.  The defendant's restitution obligation shall be paid jointly and severally with other defendants in this case until full restitution is paid.

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

By:  Brian D. Casai
        U.S. Probation Officer

Approved:

Joshua D. Sparks
Supervisory U.S. Probation Officer